UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| NATIONWIDE MUTUAL INS. CO., as successor by merger to HARLEYSVILLE MUT. INS. CO., as successor to PENN MUTUAL INS. CO., | : : | Hon. Joseph H. Rodriguez Civil Action No. 14-5330 |
| Plaintiff, | : | OPINION |
| v. | : | |
| PAUL CARIS, OLIVIA CARIS, JEFFREY R. ULAK, MICHELLE L. ULAK, | : | |
| Defendants. | : | |

This matter is before the Court on Plaintiff's motion to dismiss
Counts II, III, and IV of the Counterclaim pursuant to Federal Rule of Civil
Procedure 12(b)(6) [Doc. 17] and on cross-motion of Defendants Paul and
Olivia Caris individually and as the limited representative of Defendant
Jeffrey Ulak for summary judgment on their Counterclaim [Doc. 36].  The
Court has considered the submissions of the parties and heard oral
argument on the motion on January 14, 2016.  For the reasons expressed
on the record, and those set forth below, Plaintiff's motion to dismiss
Counts II, III, and IV of the Counterclaim will be granted, and the cross-
motion of Defendants for summary judgment on their Counterclaim will be
denied.

BACKGROUND

On August 25, 2014, Plaintiff Nationwide Mutual Insurance Company filed this action seeking a declaratory judgment pursuant to 28 U.S.C. § 2201(a) that it does not owe any indemnification obligation to the Defendants in connection with environmental remediation of property located at 47 Manhasset Trail, Medford Lakes, New Jersey (the "Property"). A State court action filed in the Superior Court of New Jersey, Law Division, Burlington County, captioned <u>Caris v. Triassic Technology, Inc.</u>, Docket No. L-1253-12, claimed that the sellers of the Property, Defendants Jeffrey and Michelle Ulak, along with other defendants,[1] fraudulently submitted closure paperwork to the New Jersey Department of Environment Protection ("NJDEP"), which allegedly caused damages to the Property buyers, Paul and Olivia Caris.  <u>See</u> Schaberg Cert., Ex. A.

It appears from the State court action that the Carises purchased the Property at issue from the Ulaks on August 14, 2008 for $215,000.  Prior to this transaction, on December 21, 2007, an underground storage tank was removed from the Property.  The contractor on site observed holes in the

---

[1] These were Triassic Technology, Inc., an environmental consulting firm, Lisa Gatone, an environmental consultant employed by Triassic, Prudential Fox and Roach, a real estate agency, and Debra R. Hales, a real estate broker.

tank, suspected release therefrom, and reported the suspected release to the NJDEP.  The Ulaks then reported the suspected release to their insurance carrier, Farmers Insurance Company,[2] which retained a consulting engineering firm to investigate.  An April 23, 2008 report back to Farmers indicated that neither the soil nor the groundwater contained contaminants above allowable standards.  At the same time, the sellers were going through a divorce and their realtor allegedly represented to the buyers that they may be able to procure the property for well below asking price.  Id.

On the heels of the consulting firm's report to the NJDEP, on August 11, 2008, the NJDEP issued a No Further Action Letter regarding the Property.  On July 9, 2009, however, the NJDEP notified the buyers that the No Further Action Letter issued on their Property had been rescinded due to falsified documents.  The underlying State court action followed alleging fraud, misrepresentation, intentional infliction of emotional distress, and breach of contract, among other claims, including a Spill Act claim for strict liability against the Ulaks pursuant to N.J. Stat. Ann. § 58:10-23.11.  Id.

---

[2] Farmers issued homeowners policies to the Ulaks from July 31, 2003 to July 31, 2008.  Compl. ¶ 14; Schaberg Cert., Ex. C.

In January 2014, the Carises agreed to a settlement in principle with the State court defendants. Compl. ¶ 16. Those defendants agreed to fund the environmental remediation of the Property for a total of $60,000 and if the NJDEP required further remedial response costs, they would fund such costs based on set percentage shares. Id. On the record memorializing the settlement, the State court indicated that the matter was settled as to the Ulaks only as to their liability during the years they were insured by Farmers, not the years prior when insured by Penn Mutual. Compl. ¶ 16-18.

The Ulaks had obtained homeowners' insurance on their Property from Penn Mutual Insurance Company, policy no. HO 0169735, for annual policy periods from July 31, 1997 to July 31, 2003, with annual personal liability limits of $300,000 per occurrence. Compl. ¶ 8; Schaberg Cert., Ex. B. On November 22, 2002, Harleysville Mutual Insurance Company entered into an agreement with Penn Mutual whereby Harleysville Mutual agreed to acquire and succeed in interest to all of the liabilities under certain insurance policies issued by Penn Mutual (including the Penn Mutual policies held by the Ulaks). Pursuant to this transaction, Penn Mutual was legally dissolved effective January 24, 2005. As a result, Harleysville Mutual became the successor to Penn Mutual, the former

insurer of the Ulaks.  Compl. ¶2.  On May 1, 2012, Nationwide then merged

with and into Harleysville Mutual, with Nationwide the sole surviving

entity.   That is, Harleysville Mutual ceased to exist as a legal entity as of

May 1, 2012.

On March 6, 2014, Nationwide first appeared in the State court action

to oppose the Carises' motion for default judgment against Ulak.  Compl. ¶

30.  By Order dated May 23, 2014, the State court set the date for a proof

hearing – July 14, 2014.  Compl. ¶ 31.  On June 25, 2014, Nationwide filed a

motion to intervene in the State court action to protect its rights at the

proof hearing, which motion was denied.  Compl. ¶ 32.  Prior to the proof

hearing, the Carises' counsel advised the State court and Nationwide's

counsel that the Carises had reached a settlement in principle with Ulak for

the years he was insured by Penn Mutual; Ulak agreed to a consent

judgment for over $350,000 and an assignment of rights against

Nationwide.  Compl. ¶ 33.

Nationwide has alleged two causes of action in its Complaint here: 1)

that there is no coverage under the Penn Mutual policies for the claims

alleged in the State court action or in the Consent Judgment because the

claims at issue do not fall within the terms, conditions, and exclusions of

the Ulak policies; and 2) that the $389,498.16 Consent Judgment that the

Carises obtained against Ulak is unenforceable as against Nationwide because it is unreasonable and was entered into collusively and in bad faith. Compl. at pp. 7-8.

The Carises have filed a Counterclaim, which is the subject of the motions now before the Court.  Count I claims that because the Carises are judgment creditors of the Ulaks, Penn Mutual is now responsible to satisfy the $389,498.16 Consent Judgment, plus interest from August 19, 2014, entered in the State court action.  Count II alleges that Penn Mutual violated the New Jersey Consumer Fraud Act, N.J. Stat. Ann. § 56:8-1 ("NJCFA"), by its allegedly unconscionable business practices in failing to acknowledge or properly handle the claim against the Ulak policies.  In Count III, the Carises reference the Unfair Claims Settlement Practice Act, N.J. Stat. Ann. § 17:29B-4(9) ("UCSPA") in claiming that Nationwide is liable for negligence per se due to its inaction for two years regarding this claim.  In Count IV, the Carises seek to hold Plaintiff accountable for bad faith.  In essence, the Carises claim that Nationwide should be held liable because it abandoned the Ulaks, their insureds, and wrongly declined to defend them.  See Griggs v. Bertram, 443 A.2d 163, 168 (N.J. 1982) ("[O]nce an insurer has had a reasonable opportunity to investigate, or has learned of grounds for questioning coverage, it then is under a duty

promptly to inform its insured of its intention to disclaim coverage or of the possibility that coverage will be denied or questioned.  Unreasonable delay in disclaiming coverage, or in giving notice of the possibility of such a disclaimer, even before assuming actual control of a case or a defense of an action, can estop an insurer from later repudiating responsibility under the insurance policy." (Citations omitted.)).

Presently, Nationwide seeks dismissal of Counts II, III, and IV of the Counterclaim or, alternatively, to sever these claims and stay them until a decision is made on the original coverage issue.  The Carises request summary judgment on all but Count IV of their Counterclaim.

<u>Applicable Standards</u>

Federal Rule of Civil Procedure 12(b)(6) allows a court to dismiss an action for failure to state a claim upon which relief can be granted. In such cases, the District Court must "accept as true all of the allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff." <u>Morse v. Lower Merion School Dist.</u>, 132 F.3d 902, 906 (3d Cir. 1997).  A complaint will survive a motion to dismiss if it contains sufficient factual matter to "state a claim to relief that is plausible on its face." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662,

678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" Id. (internal quotations and alterations omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'-'that the pleader is entitled to relief.'" Id. at 679.

"In addition to the complaint itself, the court can review documents attached to the complaint and matters of public record, and a court may take judicial notice of a prior judicial opinion." McTernan v. City of York, Penn., 577 F.3d 521, 526 (3d Cir. 2009) (internal citations omitted).

Federal Rule of Civil Procedure 56(c) provides that summary judgment should be granted if "pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show

that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." See also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In deciding a motion for summary judgment, the court must construe all facts and inferences in the light most favorable to the nonmoving party.  See Boyle v. Allegheny Pa., 139 F.3d 386, 393 (3d Cir. 1998). The moving party bears the burden of establishing that no genuine issue of material fact remains. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).  A fact is material only if it will affect the outcome of a lawsuit under the applicable law, and a dispute of a material fact is genuine if the evidence is such that a reasonable fact finder could return a verdict for the nonmoving party.  See Anderson, 477 U.S. at 252.

The nonmoving party must present "more than a scintilla of evidence showing that there is a genuine issue for trial." Woloszyn v. County of Lawrence, 396 F.3d 314, 319 (3d Cir. 2005).  "If the evidence is merely colorable . . . or is not significantly probative . . . summary judgment may be granted." Anderson, 477 U.S. at 249-50 (internal citations omitted). The court's role in deciding the merits of a summary judgment motion is to determine whether there is a genuine issue for trial, not to determine the credibility of the evidence or the truth of the matter.  Id. at 249.

## Analysis

The Carises argue that they are entitled to enforcement of the State court Consent Judgment against the Penn Mutual policy proceeds. "Given Nationwide's failure to properly acknowledge the Carises' claims against the Ulaks, the failure to investigate the claim, the failure to notify their insureds, and the failure to enter an appearance that would have prevented the entry of judgment against the Ulaks, the company should not be permitted to rely upon its policy terms to contest coverage." (Def. Br. at Doc. 66, p. 33.)

If there is no coverage available to the Ulaks under the Penn Mutual policies for the Consent Judgment, the Carises, as judgment creditors, would have no right to recover. On the record before the Court, this coverage question is replete with genuine issues of material fact. Accordingly, summary judgment will be denied on Count I of the Counterclaim. The parties' competing requests for declaratory judgment will proceed.

## NJCFA

Nationwide argues that Count II of the Counterclaim cannot survive because it does not arise out of any alleged fraud in the sale and marketing of insurance policies, which is the only circumstance in which CFA claims

may proceed against an insurance carrier.  See Myska v. New Jersey Manufacturers Ins. Co., 114 A.3d 761, 777 (N.J. Super. Ct. App. Div. 2015) ("[W]hile the CFA 'encompass[es] the sale of insurance policies as goods and services that are marketed to consumers,' it was not intended as a vehicle to recover damages for an insurance company's refusal to pay benefits." (Quoting Lemelledo v. Beneficial Mgmt. Corp. of Am., 696 A.2d 546, 551 (N.J. 1997)).

A federal court exercising diversity jurisdiction is obliged to apply the substantive law of the state in which it sits.  Erie Railroad Co. v. Tompkins, 304 U.S. 64 (1938).  In the absence of a State Supreme Court decision directly on point, a federal court sitting in diversity must predict how the State's Supreme Court would decide the issue.  McKenna v. Ortho Pharmaceutical Corp., 622 F.2d 657, 661–62 (3d Cir. 1980).  "Decisions of intermediate appellate courts of the state, while not conclusive, are 'indicia of how the state's highest court might decide' the issue."  McGowan v. University of Scranton, 759 F.2d 287, 291 (3d Cir. 1985) (quoting Pennsylvania Glass Sand Corp. v. Caterpillar Tractor Co., 652 F.2d 1165, 1167 (3d Cir. 1981)).

In New Jersey, "[t]o prevail on a CFA claim, a plaintiff must establish three elements: '1) unlawful conduct by defendant; 2) an ascertainable loss

by plaintiff; and 3) a causal relationship between the unlawful conduct and

the ascertainable loss.'" Zaman v. Felton, 98 *A*.3d 503 (N.J. 2014) (quoting

Bosland v. Warnock Dodge, Inc., 964 *A*.2d 741 (N.J. 2009)).  Under the

CFA, an "unlawful practice" is defined to include:

> unconscionable commercial practice, deception, fraud, false
> pretense, false promise, misrepresentation, or the knowing,
> concealment, suppression, or omission of any material fact with
> intent that others rely upon such concealment, suppression or
> omission, in connection with the sale or advertisement of any
> merchandise or real estate, or with the subsequent performance
> of such person as aforesaid, whether or not any person has in
> fact been misled, deceived or damaged thereby.

N.J. Stat. Ann. § 56:8–2.

In this case, there are no allegations that Nationwide fraudulently

procured the purchase of the insurance policies issued.  Rather, the claim is

that Nationwide wrongly refused to pay benefits.  The New Jersey Courts'

Appellate Division has recently made clear that such a claim cannot

properly form the basis of a CFA suit.  Myska, 114 A.3d at 777 (Noting "the

insurance industry is already heavily regulated by the Department of

Insurance, making exclusive regulatory jurisdiction of insurance

companies, at least with respect to the payment of claims, within the

Department of Insurance." (Citations omitted.)).

This Court acknowledges the 2007 language used by the Third Circuit

Court of Appeals that "[t]he CFA covers fraud both in the initial sale (where

the seller never intends to pay), and fraud in the subsequent performance (where the seller at some point elects not to fulfill its obligations)," Weiss v. First Unum Life Ins. Co., 482 F.3d 254, 266 (3d Cir. 2007), but finds that decision distinguishable from this case as the Circuit was dealing with the discontinuation of previously authorized insurance benefits in the middle of claim, rather than determination of an initial coverage dispute.  Indeed, the Appellate Division considered but distinguished Weiss on the same grounds:

> We are not persuaded by plaintiffs' reliance on Weiss v. First Unum Life Insurance Company, 482 F.3d 254 (3d Cir. 2007). . . . We need not determine the soundness of this legal analysis because the facts in Weiss are significantly distinguishable from those at hand.  The court in Weiss found the CFA applied to allegations of fraudulent discontinuation of previously authorized benefits.  The Court did not discuss the precedent we have cited, which excludes determination of initial coverage disputes.  Nikiper v. Motor Club of Am. Cos., 557 A.2d 332 (N.J. Super Ct. App. Div. 1989); Kuhnel v. CAN Ins. Cos., 731 A.2d 564 (N.J. Super Ct. App. Div. 1989) [As opposed to implicating the marketing or sale of insurance policies, issues involving the receipt of benefits are beyond the scope of the CFA.]

Myska, 114 A.3d at 777.  In predicting how the New Jersey Supreme Court would decide this issue, this Court finds Myska well-reasoned and persuasive: the CFA does not provide Plaintiffs a remedy for Nationwide's failure to pay benefits.  See Granelli v. Chicago Title Ins. Co., 569 Fed. Appx. 125, 133 (3d Cir. 2014) ("New Jersey courts . . . have consistently held

that the payment of insurance benefits is not subject to the Consumer Fraud Act." (Quoting <u>VanHolt v. Liberty Mut. Fire Ins. Co.</u>, 163 F.3d 161, 168 (3d Cir. 1998.)).

Further, as assignees of Ulak, the Carises lack standing to sue under the NJCFA because they have not alleged that they suffered an ascertainable loss as a result of Plaintiff's conduct. <u>See, e.g.</u>, <u>Levy v. Edmund Buick-Pontiac, Ltd.</u>, 637 A.2d 600, 601 (N.J. Super. Ct. Law Div. 1993) (finding that the plaintiff was "merely the voluntary assignee of a right to pursue the claim; he has not demonstrated that *he* suffered any ascertainable loss. Plaintiff assumed the claim, not the statutory relief afforded to the victim of the allegedly unconscionable conduct.") (Emphasis in the original).

Finally, it appears that a tort claim for fraud against an insurance carrier could not have been assigned prior to the entry of judgment on such a claim. <u>See, e.g.</u>, <u>Dransfield v. Citizens Cas. Co. of N.Y.</u>, 74 A.2d 304, 306 (N.J. 1950) ("While the injured person has no greater right under the policy than has the assured, he has 'a cause of action the moment he is injured' which ripens into a right of action when he recovers a judgment against the assured."). For these reasons, the Court grants the motion to dismiss Count II of the Counterclaim.

14

UCSPA

The Carises contend that Nationwide's violation of claims-handling regulations "designed to prevent precisely the harm caused by the failure to follow the regulations," (Def. Br., p. 37), may be considered negligence *per se.* (Citing <u>Thompson v. Victor's Liquor Store</u>, 523 A.2d 269 (N.J. Super. Ct. App. Div. 1987) (finding the sale or service of alcoholic beverages to an intoxicated person or a minor constitutes negligence *per se*)).  However, as judgment creditors and assignees, the Carises lack standing to bring this claim because Ulak did not obtain a judgment against Nationwide for negligence.  In New Jersey, "[a] tort claim is not subject to assignment prior to judgment."  <u>Cherilu v. Federal Exp.</u>, 87 A.3d 269, 273 (N.J. Super. Ct. App. Div. 2014) (citations omitted).  The Carises' assignment is potentially valid only for Ulak's coverage claim.  Moreover, to the extent the Carises allege negligence as an alternative to bad faith, they have failed to state a legally cognizable cause of action under New Jersey law.  <u>See</u> <u>Pickett v. Lloyd's</u>, 621 A.2d 445, 457 (N.J. 1993) (holding that "an insurance company may be liable to a policyholder for bad faith in the context of paying benefits under a policy. The scope of that duty is not to be equated with simple negligence.").

Further, there is no private right of action for policyholders against their insurers based on UCSPA violations or negligence.  <u>Pickett v. Lloyd's</u>, 621 A.2d 445, 468 (N.J. 1993) (the UCSPA "regulatory framework does not create a private cause of action"); <u>Pierzga v. Ohio Cas. Group of Ins. Cos.</u>, 504 A.2d 1200, 1204 (N.J. Super. Ct. App. Div. 1986) (affirming dismissal of insured's claims under the UCSPA, noting that the "statute applies to wrongs to the public rather than any individual and violations of the statute do not create individual or private causes of action"); <u>ProCentury Ins. Co. v. Harbor House Club Condo. Ass'n, Inc.</u>, 652 F. Supp. 2d 552, 563 (D.N.J. 2009) (dismissing insured's complaint to the extent it could be construed to state a cause of action under the UCSPA); <u>Rothschild v. Foremost Ins. Co.</u>, 653 F. Supp. 2d 526, 537 (D.N.J. 2009) (holding that there is no private right of action for violations of the UCSPA and that in passing the UCSPA, the New Jersey Legislature "was primarily concerned with addressing injuries to the public rather than providing individual citizens with another avenue of recovery against insurance providers.").  As such, Count III of the Counterclaim is dismissed.

<u>Bad faith</u>

To state a claim for bad faith denial of insurance coverage, Plaintiff must show: (1) the insurer lacked a reasonable basis for its denying

16

benefits, and (2) the insurer knew or recklessly disregarded the lack of a reasonable basis for denying the claim. <u>Pickett</u>, 621 A.2d 445. Such bad faith claims are to be analyzed in light of a "fairly debatable" standard, which posits that "[i]f a claim is 'fairly debatable,' no liability in tort will arise." <u>Pickett</u>, 621 A.2d at 453. "Under the salutary 'fairly debatable' standard enunciated in <u>Pickett</u>, 'a claimant who could not have established as a matter of law a right to summary judgment on the substantive claim would not be entitled to assert a claim for an insurer's bad faith refusal to pay the claim.'" <u>Badiali v. New Jersey Mfrs. Ins. Group</u>, 107 A.3d 1281, 1288 (N.J. 2015). "In other words, if there are material issues of disputed fact which would preclude summary judgment as a matter of law, an insured cannot maintain a cause of action for bad faith." <u>Ketzner v. John Hancock Mut. Life Ins. Co.</u>, 118 Fed. App'x 594, 599 (3d Cir. 2004) (citation omitted). <u>See also</u> <u>Tarsio v. Provident Ins. Co.</u>, 108 F. Supp. 2d 397, 401 (D.N.J. 2000). Thus, when the insured's complaint presents issues of material fact as to the underlying claim, dismissal of a related bad faith claim is proper. <u>Fuscarello v. Combined Ins. Group, Ltd.</u>, 2011 WL 4549152, at *5 (D.N.J. Sept. 29, 2011) (dismissing plaintiff's bad faith claim on a motion to dismiss where insurer's reason for refusing to pay, as alleged in the complaint, presented disputed issues of material fact as to the

underlying substantive claim); <u>Dare Inv., LLC v. Chicago Title Ins. Co.</u>, 2011 WL 2600594, at * 12 (D.N.J. June 29, 2011) (dismissing plaintiffs bad faith claim because plaintiff could not prevail on summary judgment for the underlying insurance claim due to the ambiguity of the title policy at issue and the plaintiff's reasonable expectations thereunder).

In the case of processing delay, bad faith is established by showing no valid reasons existed to delay processing the claim and the insurance company knew or recklessly disregarded the fact that no valid reasons supported the delay." <u>Pickett</u>, 621 A.2d at 457-58. "Although applied in slightly different circumstances, the 'fairly debatable' and 'unreasonable delay' tests are 'essentially the same.'" <u>Johnson v. Liberty Mut. Ins. Co.</u>, No. 10–0494, 2010 WL 2560489, at *2 (D.N.J. June 24, 2010) (quoting <u>Pickett</u>, 621 A.2d at 454). "[M]ere failure to settle a debatable claim does not constitute bad faith." <u>Badiali</u>, 107 A.3d at 1288 (citations omitted).

In Count IV of their Counterclaim, the Carises generally allege that Nationwide failed to properly confirm the Carises' claims, failed to properly handle the claims, failed to investigate the facts underlying coverage, failed to issue an adequate denial of coverage, failed to adequately reserve their rights, failed to have the claims handled by an authorized agent of a company licensed to produce and handle homeowners insurance in New

Jersey, failed to comply with any of the minimum handling procedures and deadlines set forth in the New Jersey Insurance Regulations, engaged in Fraudulent Trade Practices, and have accused its own policyholder and the Carises of fraud.  The Carises cannot establish that Nationwide lacked a reasonable basis to deny the January 2013 claim or that Nationwide's coverage position -- that the State court action did not allege "property damage" caused by an occurrence prior to 2003 -- was otherwise not fairly debatable.

When a carrier proffers "plausible reasons for the denial of coverage" and "demonstrates that there is, at the very least, genuine questions regarding whether [an insured's] claims fall within the coverage provided," dismissal of a related bad faith claim is proper, even on a motion to dismiss. New Jersey Title Ins. Co. v. Nat'l Union Fire Ins. Co. of Pittsburgh, No. 11-CV-0630 DMC JAD, 2011 WL 6887130, at *7 (D.N.J. 2011); see also Fuscellaro v. Combined Ins. Group, Ltd., 2011 WL 4549152, at *5 (D.N.J. 2011) (dismissing bad faith claim on a motion to dismiss).

Under New Jersey law, liability policies only respond to alleged damage that occurs during an insurer's policy period.  Quincy Mut. Fire Ins. Co. v. Borough of Bellmawr, 799 A.2d 499, 502 (N.J. 2002) ("insurance policies cover losses resulting only from 'occurrences' that take place during

the policy period.").  In the case of coverage for alleged progressive environmental property damage, New Jersey requires the insured to bear the burden to prove that groundwater contamination occurred during a policy period in order to trigger coverage.  <u>Carter-Wallace v. Admiral Ins. Co.</u>, 712 A.2d 1116, 1125 (N.J. 1998) (citations omitted); <u>Hartford Acc. & Indem. Co. v. Aetna Life & Cas. Ins. Co.</u>, 483 A.2d 402, 409 (N.J. 1984) (where the issue "is whether there was a contract of insurance in effect when an incident occurred, [it is] the party claiming coverage [that] has the burden of proof").  Because this Court finds that Nationwide's denial of benefits was fairly debatable, the Carises' claim of bad faith cannot survive.

## Conclusion

For these reasons, as well as those expressed on the record during oral argument, Plaintiff's motion to dismiss Counts II, III, and IV of the Counterclaim will be granted, and the cross-motion of Defendants for summary judgment on their Counterclaim will be denied.

An appropriate Order will be entered.

Dated: March 14, 2016                              /s/ Joseph H. Rodriguez
                                                    JOSEPH H. RODRIGUEZ
                                                    U.S.D.J.